# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1191 | **DATE** | 10/30/2002 |
| **CASE TITLE** | PROMERO, INC. vs. TERRY MAMMEN,et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants in part and denies in part defendants' motion to dismiss [5-1]. The Court denies the motion to dismiss based on Rule 12(b)(2) and 12(b)(3). The Court grants the motion to dismiss based on Rule 12(b)(6) as to Counts II, III, IV, and V and dismisses those counts without prejudice and denies the Rule 12(b)96) motion as to Count I. Status hearing set for November 13, 2002 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | NOV 01 2002 | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

Document Number

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PROMERO, INC., a Delaware Corporation,     )
)
      Plaintiff,                         )
)
      v.                               )       Judge Ronald A. Guzmán
)
TERRY MAMMEN, individually, and     )       02 C 1191
ARNOLD KUM, individually,           )
)
      Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Promero, Inc. has sued defendants Terry Mammen and Arnold Kum in a five-count complaint alleging breach of contract (Count I), equitable estoppel (Count II), misrepresentation and fraud (Count III), civil conspiracy (Count IV), and tortious interference with prospective economic advantage (Count V). Defendants have moved to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), 12(b)(3), and 12(b)(6). For the following reasons, the Court denies the motion to dismiss based on Rule 12(b)(2) and 12(b)(3). The Court grants the Rule 12(b)(6) motion to dismiss Counts II, III, IV, and V and dismisses those counts without prejudice and denies the Rule 12(b)(6) motion to dismiss as to Count I.

## FACTS

Plaintiff is a Delaware corporation with its principal place of business in Florida. (Compl. ¶ 14.) It is the successor in interest to Chicago 216e, ("Chicago 216"), an Illinois limited liability company operating at the time as a private equity firm, which acquired the assets of ByeByeNow.com ("BBN"), a Florida corporation. (*Id.* ¶ 1.)

Defendants were the sole shareholders of Kum Mammen Investors ("KMI"), a California corporation, and KMI was the sole shareholder of Cruise Holidays, Inc. ("Cruise Holidays") and of CruiseWeb Software Development ("CruiseWeb"). (*Id.* ¶ 17.) In February 2000, BBN entered into a series of agreements (collectively the "KMI Agreement") with defendants by which KMI became a wholly owned subsidiary of BBN through a merger with an existing subsidiary of BBN. KMI's subsidiaries, Cruise Holidays and Cruise Web, remained wholly owned subsidiaries of KMI, which BBN owned upon completion of the KMI Agreement. (*Id.* ¶¶ 18-19.) In return for their stock in KMI, defendants received 1,500,000 shares of preferred stock in BBN, and a cash payment of $2,500,000, which was to be paid in monthly installments of $150,000, with the unpaid balance to become due on December 31, 2000, or, if BBN made an IPO of its common stock before then, upon the IPO's completion. (*Id.* ¶ 20.) Furthermore, if the IPO had not occurred by the twelve-month anniversary of the closing of the KMI Agreement, BBN was to pay defendants additional cash payments of $100,000 per month, and an additional cash payment of $2,900,000 was to be due if the IPO had not occurred by December 31, 2001. (*Id.*) Thus, by the terms of the KMI Agreement, defendants became major creditors of BBN. To secure its obligations to defendants, as part of the KMI Agreement, BBN granted defendants a security interest in the stock of Cruise Holidays and Cruise Web, and certain other assets including intellectual property and rights under franchise agreements. (*Id.* ¶ 21.)

BBN's business went south shortly after the closing of the KMI Agreement. By the end of the calendar year 2000, BBN was unable to pay the monthly installments to defendants under the KMI Agreement. (*Id.* ¶ 22.) Furthermore, due to the financial

2

conditions of BBN and the condition of the capital markets, it became clear that BBN would not be able to either complete the IPO, pay the additional $100,000 monthly payments, or the $2,900,000 IPO contingency payment. (*Id.*)

BBN sought a way out of its financial distress. In December, 2000, BBN began discussion with Thomas Rubio ("Rubio"), then the manager of Chicago 216, regarding Chicago 216's possible acquisition of BBN. (*Id.* ¶ 23.) To facilitate its proposed acquisition of BBN, Chicago 216 initiated negotiations with BBN's creditors, including the defendants, regarding a restructuring of the companies debt. (*Id.* ¶ 25.) This suit arises out of these negotiations.

Plaintiff alleges that a series of discussions between Gary Plotkin ("Plotkin"), the attorney for defendants, and Chicago 216 occurred in Encino, California and Pompano Beach, Florida, in December 2000 and January 2001. (*Id.* ¶ 26.) Plaintiff also refers to a meeting between Plotkin and Rubio that occurred in Chicago, and various telephone calls from Plotkin directed to the Plaintiff and its attorneys in State of Illinois. (*Id.* ¶¶ 12, 26.) Plaintiff alleges that in these discussions, Plotkin represented that he had actual authority to negotiate on behalf of the defendants and that he also appeared to have apparent authority to negotiate on their behalf. (*Id.* ¶ 27.)

Plaintiff alleges that over the course of these discussions, defendants through their agent Plotkin and Chicago 216, entered into an oral contract. (*Id.* ¶ 28.) Defendants orally agreed not to declare a default under the KMI Agreement and foreclose on their security in BBN. (*Id.*) In exchange, Chicago 216 agreed to cause BBN to sell its franchising business to a third party and apply the proceeds of the sale toward payment of BBN's remaining unpaid debt to defendants. (*Id.*) Pending that sale, BBN would pay

3

defendants the monthly installments then in arrears, and would pay them a portion of each monthly installment due thereafter (collectively the "Cure Payments"). (*Id.*) Chicago 216 would also make certain loans (the "Bridge Loans") to BBN that would enable them to continue operating and to make the Cure Payments to defendants. (*Id.* ¶ 29.) Plaintiff alleges that through the oral contract, defendants also agreed to reduce the remaining balances due to them under the KMI agreement to $2,000,000 plus the amount of the Cure Payment, and they agreed to invest in either (1) Chicago 216, or (2) any entity formed by Chicago 216 to acquire and operate BBN. (*Id.* ¶ 30.) The amount the defendants were to invest was the entire amount of the Cure Payments less any amount that their share from the proceeds of the sale of BBN's franchise business was less than $2,000,000. (*Id.*) Plaintiff claims that pursuant to and in reliance on this oral contract, Chicago 216 made the Bridge Loans to the BBN and that from the proceeds of those loans the defendants received Cure Payments aggregating to $650,000. (*Id.* ¶ 32.)

Following the alleged oral contract, Chicago 216 purchased the assets of BBN in connection to a Chapter XI Bankruptcy Proceeding for BBN. BBN sold its assets in its franchising business, and defendants received an amount in excess of $2,900,000, which being over $2,000,000, obligated them under the terms of the oral contract to invest the entire $650,000 Cure Payments in Chicago 216 or an entity formed by Chicago 216 to acquire and operate BBN. (*Id.* ¶¶ 34-35.) Chicago 216 formed such an entity, a wholly-owned subsidiary Promero, to which it contributed all of the assets in BBN, including any claim of Chicago 216 against the defendants, in return for shares of the common stock of Promero, and thereupon Chicago 216 dissolved and distributed its Promero stock to its shareholders. (*Id.* ¶ 36.) Plaintiff Promero brings this action alleging a breach of

contract by defendants in refusing to invest the Cure Payments of $650,000 in Promero, and alleging other tort and contract claims.

## DISCUSSION

Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), arguing that the alleged basis of jurisdiction, certain phone calls from Plotkin to plaintiffs in Illinois, and a meeting in Illinois between Plotkin and the plaintiffs is not sufficient to support jurisdiction in Illinois under either the Illinois long-arm statute or the due process clause of the U.S. Constitution. Alternatively, they argue that even if these contacts were sufficient to support personal jurisdiction, the complaint should be dismissed pursuant to Rule 12(b)(3) because venue is improper. Furthermore, they move to dismiss under Rule 12(b)(6), arguing that none of the five counts alleged in the complaint state claims upon which relief can be granted.

### I. Motion to Dismiss for Lack of Personal Jurisdiction

The plaintiff bears the burden of establishing facts showing personal jurisdiction over the defendants. *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). The Court can weigh affidavits submitted by both parties. *Banwell v. Ill. College of Optometry*, 981 F. Supp. 1137, 1139 (N.D. Ill. 1997). However, "'if a defendant's affidavit contesting jurisdiction is not refuted by a counter-affidavit filed by the plaintiff, the facts alleged in the defendant's affidavit are taken as true.'" *Connolly v. Samuelson*, 613 F. Supp. 109, 111 (N.D. Ill. 1985) (quoting *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 248 (1st. Dist. 1981)). Otherwise, the court must accept all undenied factual allegations

as true and interpret all disputed facts in favor of the party asserting jurisdiction. *Banwell*, 981 F. Supp. at 1139; *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988).

In a diversity action, a federal court will have personal jurisdiction over a defendant only if an Illinois state court would have jurisdiction. *Banwell*, 981 F. Supp. at 1139. An Illinois state court has jurisdiction over the case if the Illinois long-arm statute, 735 ILL. COMP. STAT. 5/2-209 (2002), grants jurisdiction, jurisdiction is consistent with the Illinois constitution, and if jurisdiction over the defendants complies with the due process requirements of the federal constitution. *Id.*

Plaintiff alleges jurisdiction over defendants under three sections of the Illinois long-arm statute. The long-arm statute provides for jurisdiction over a person for a cause of action arising from actions of that person or those of his agent that constitute, (1) transacting "any business within this State"; (2) committing "a tortious act within this State"; (7) making or performing "any contract or promise substantially connected with this State." 735 ILL. COMP. STAT. 5/2-209(a). Plaintiff alleges that defendants transacted business in Illinois and entered into an oral contract substantially connected with Illinois, and because all the claims arise out of these actions, the Court has jurisdiction over defendants. It also argues that defendants committed a tortious act within Illinois, and as such, an Illinois court has jurisdiction over its tort claims.

Sections (1) and (7) are generally linked and considered in conjunction with one another. *Presley v. P & S Grain Co., Inc.*, 289 Ill. App. 3d 453, 460 (5th Dist. 1997). Three common factors courts look at to determine whether or not a defendant transacted business in Illinois for the purposes of personal jurisdiction are: (1) who initiated the transaction; (2) where the contract was entered into; (3) where the performance of the

6

contract was to take place. *Viktron Ltd. P'ship v. Program Data Inc.*, 326 Ill. App. 3d 111, 117-18 (2d Dist. 2001). Furthermore, "[a] fourth factor, where the contract was negotiated . . . is clearly relevant." *Id.*

The factors of where the contract was to be performed and where the parties negotiated the contract weigh heavily in favor of finding for jurisdiction in Illinois. It is obvious that at the time of the alleged contract, the parties would have contemplated that the contract would be performed to a substantial degree in Illinois. Plaintiffs allege that the defendants agreed to invest a sizeable amount of money in either (1) Chicago 216, clearly an Illinois business, or (2) an entity Chicago 216 formed to manage BBN. Taking the allegations as true, clearly the defendants must have foreseen that their performance of the oral contract would very likely include investing money and taking an ownership interest in an Illinois business. The defendants argue that Promero is a Delaware corporation doing business in Florida, and that if they were to perform the contract today, the performance would not take place in Illinois. However, the Court cannot ignore the fact that when the alleged contract was made, it appeared as if the contract would be performed in Illinois—one of the contingencies the defendants agreed to was investing in Chicago 216, an Illinois business. Every case that articulates the factors determining whether a contract is substantially connected with Illinois under 5/2-209(a)(1) makes it clear that the relevant time period for the analysis is the time of contracting. *See id.*

That some of the negotiations for the putative contract occurred in a meeting between the plaintiff and defendants' agent in Illinois also weighs in favor of a finding of jurisdiction over the defendants. Although Plotkin's affidavit claims that at this meeting "no terms of a potential deal were negotiated," he admits that the parties discussed "the

7

possibility of working out a deal between Promero and Defendants to acquire Promero stock." (Plotkin. Aff. ¶ 11.) Furthermore, according to his affidavit these discussions occurred after he had already met Rubio of Chicago 216 twice and exchanged various communications with Rubio for the purpose of discussing a deal between Chicago 216 and the defendant. (*Id.* ¶¶ 6-9.) Despite the affidavit's classification of the dialogue between Plotkin and Rubio in Chicago, as well as at the other meetings as discussions rather than negotiations, it is difficult for the Court to see how meeting in Chicago to discuss the possible acquisition of stock in an Illinois business after several other discussions had already occurred between the parties on this matter could not be considered negotiation of a contract in the forum state.

Because the alleged contract was negotiated in part in Illinois and at the time the parties should have expected that performance would occur in Illinois, jurisdiction over the defendants in Illinois is proper under Sections (a)(1) and (a)(7) of the Illinois long-arm statute. *See First Nat'l Bank of Chicago v. V.B. Boelcskevy*, 126 Ill. App. 3d 271, 274 (1st Dist. 1984) ("When a defendant comes to Illinois and engages in negotiations of some substance regarding the transaction from which the cause of action arises, then the defendant submits to jurisdiction under the long-arm statute. A defendant transacts business in Illinois when substantial performance of his or her contractual duties is to be rendered in Illinois."). In *Boelcskevy*, the court decided that it had jurisdiction where the defendant was a party to a loan guarantee agreement that was negotiated over a series of telephone calls, but where the defendant discussed the agreement while physically present Illinois on only one occasion. *Id.* at 272.

Plaintiff does not contend that the contract was actually entered into in Illinois, and the parties do not dispute that the plaintiff initiated contact with the defendants regarding the negotiation of the alleged contract. However, whether the contract was entered into in the forum state, and whether the defendant initiated the contacts are only two factors to the analysis, and neither is absolutely necessary for a finding of jurisdiction over the defendants, particularly when negotiations over the contract occurred in Illinois and performance was contemplated in Illinois. *See Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1275 (N.D. Ill. 1991) (holding that substantial negotiations occurring in Illinois over a contract were sufficient to support personal jurisdiction even though the contract was not actually entered into in Illinois.); *Continental Bank N.A. v. Everett*, 742 F. Supp. 508, 511 (N.D. Ill. 1990), *aff'd*, 964 F.2d 701 (7th Cir. 1992).

Defendants make several arguments why the particular contacts with Illinois are not sufficient to support a finding of personal jurisdiction. They claim that an exchange of telephone calls and correspondence with a person in the forum state is not enough to support a finding of personal jurisdiction. (Mem. Law Supp. Defs.' Mot. Dismiss at 4.) Defendants are correct in arguing that telephone calls and correspondence through the mail is insufficient, without anything else, to support a finding of personal jurisdiction. Two of the cases they cite in favor of their proposition are situations where the only contacts that could be construed as transacting business in the forum state were certain phone calls and correspondence. *Konicki v. Wirta*, 169 Ill. App. 3d 21, 27 (2d Dist. 1988); *Gordon v. Tow*, 148 Ill. App. 3d 275, 281 (1st. Dist. 1986). The present case involves much more than mere phone calls and correspondence.

9

Defendants also argue that even if Plotkin negotiated terms of the oral contract in Illinois, the fact that he did not come to Illinois specifically to negotiate this contract somehow nullifies the effect of his negotiating the contract in Illinois for the jurisdictional analysis. Once again, defendants' argument fails to take into account the entire picture. Certainly jurisdiction would be improper if the only connection with the forum state is that the party negotiated terms of a contract otherwise completely unconnected to the forum state while in that state for reasons unrelated to the negotiations. *Kaye-Martin v. Brooks*, 267 F.2d 394, 397-98 (7th Cir. 1959).

However, in *Continental Bank N.A. v. Everett*, where defendants negotiated a contract in Illinois, executed it out of state, but did not come to Illinois specifically for the negotiations, the court saw "no reason to disregard these [in-state] meetings merely because [defendant] also conducted other business while in Illinois." 742 F. Supp. at 511. The *Continental* court determined that jurisdiction was proper based on "the combined weight of the factors" despite the fact that "no single factor standing alone would appear to be sufficient to support *in personam* jurisdiction over the defendants." *Id.* Similarly, in this case, this Court views the negotiation which took place in Illinois, regardless of the fact that defendant also conduct other business while in Illinois, as one factor among many supporting a finding of jurisdiction.

In summary, due to the various contacts between the defendants and Illinois, including negotiations of a contract occurring in the state, various correspondence to the defendants, and the likelihood that the contract would be performed in Illinois, the Court finds jurisdiction over the defendants in Illinois as to their contract claims based on 5/2-209(a)(1), the Illinois long-arm statute's "transaction of business" clause.

10

Defendants' conduct in Illinois, which amounts to the transaction of business in the state, allows the court to assert jurisdiction over both the plaintiff's tort claims (Counts III, IV, and V) as well as its contract claims. The Illinois long-arm statute states that plaintiffs can assert only causes of action "arising from" acts on which jurisdiction is based. 735 ILL. COMP. STAT. 5/2-209(f) (2002). Thus, the question is whether the defendants' actions in transacting business in Illinois give rise to the plaintiff's tort claims as well as its contract claims.

"[T]he statutory phrase 'arising from' 'requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the Illinois courts.'" *In re Oil Spill by Amoco Cadiz off Coast of France on March 16, 1978*, 699 F.2d 909, 915 (7th Cir. 1983) (quoting *Koplin v. Thomas, Haab & Botts*, 73 Ill. App. 2d 242, 253 (1966)). "A cause of action need not be contractual to be within [the long-arm statute]." *Id.* In *In re Amoco*, the plaintiffs asserted certain tort claims relating to an oil spill in France over both the operator of the tanker, Amoco, an Illinois-based company and the builder of the ship, Astilleros, a Spanish company. Amoco also cross-claimed against Astilleros for indemnity and contribution. *Id.* at 912. The only basis for jurisdiction for Astilleros was under the predecessor of section 5/2-209(a)(1), the Illinois long-arm statute providing for jurisdiction over parties who transact business in Illinois. Astilleros had negotiated and signed the contract to build the ship in Illinois. *Id.* at 914. Judge Posner, writing for the court, ruled that although Amoco's claim against Astilleros for indemnity was not strictly an action in contract, it had "the form of a contractual argument—enough so that it can be said to 'arise from' the negotiation and signing of the shipbuilding contract." *Id.* at

11

915. Thus, jurisdiction was proper over that claim under the Illinois long-arm statute. In regard to the French plaintiffs' tort claims, although stating that "[t]he relationship between the contract signed in Illinois and the oil spill is looser" than that between the contract and Amoco's indemnity claims, *id.* at 917, the court held that the tort claims arose from the contract to build the ship because "the negotiation and signing of the contract were critical steps in the chain of events that led to the oil spill." *Id.*

The present case involves tort claims, and the parties dispute whether or not the injury sustained occurred in Illinois. However, an inquiry into the situs of the injury is irrelevant because as in *Amoco*, the alleged injuries all arise from the business transactions in Illinois. Furthermore, the injuries the plaintiffs allege in this case are much more clearly connected to the oral contract than the injuries to the French plaintiffs in *Amoco* were connected to the contract in that case. Each of the plaintiff's three tort claims in this case specifically rely on a finding that the defendants engaged in certain business transactions in Illinois. Because the alleged tort claims all arise from the defendants' business transactions in Illinois, jurisdiction over the defendants on those claims is proper based on section 5/2-209(a)(1), and the Court need not consider whether there was a "commission of a tortious act within this State," so as to base jurisdiction on section 5/2-209(a)(2).

The Court also finds that its assertion of jurisdiction over the defendants meets the "due process" requirements of the U.S. Constitution. To comport with due process requirements two factors must be satisfied. First, the defendant must have the requisite "minimum contacts" with the forum: "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Second, in light of the defendant's contacts with the forum, the assertion of jurisdiction must comport with "fair play and substantial justice." *Id.* at 477. After a showing of the necessary minimum contacts, to show that jurisdiction would not comport with "fair play and substantial justice," the burden is on the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

In this case, the alleged conduct of defendants was such that they should have reasonably anticipated being haled into court in Illinois. At the time of the agreement, it seemed the defendants would invest a significant sum in a company doing business in Illinois. (Compl. ¶ 30.) The name of the company in which the defendants were to potentially become a large shareholder, "Chicago 216e", which they knew to be an Illinois business, should have been a reasonable tip off that they might be haled into court in Illinois regarding their agreement to invest. Furthermore, the defendants have presented no compelling case why jurisdiction in Illinois would be unreasonable notwithstanding their contacts with the state. Therefore, jurisdiction in Illinois comports with the due process requirements of the U.S. Constitution.[1]

---

[1]"Illinois court have held that the long-arm statute is narrower in scope than the constitutional due process test; by satisfying the requirements of the Illinois long-arm statute, the plaintiff necessarily satisfies the "minimum contacts" test set forth in *International Shoe* and its progeny." *See Cont'l Bank*, 742 F. Supp. at 512 (citing *Arthur Young & Co. v. Bremer*, 197 Ill. App. 3d 30, 35 (1990); *Green v. Advance Ross Elecs. Corp.*, 86 Ill.2d. 431, 436-37 (1981)).

## II. Motion to Dismiss for Improper Venue

The Court also denies defendants' motion to dismiss for improper venue. Venue in a diversity action is proper in "any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) (2002). The plaintiff bears the burden of establishing that venue is proper. *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). A majority of the events giving rise to the claim need not occur in a particular venue, only a "substantial part." *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001). On a motion to dismiss under Rule 12(b)(3), the court takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and can examine facts outside the complaint. *Id*. The court must resolve factual conflicts and draw reasonable inferences in the plaintiff's favor. *Id*.

A substantial portion of the events giving rise to plaintiff's claims occurred in Illinois. The parties contracted for a potential investment in Illinois. They negotiated the contract over the phone in various communications made to and from Illinois, and the agent of the defendant engaged in discussions over the contract while in Illinois. Plotikin's affidavit admits that these discussions occurred. (Plotkin Aff. ¶¶ 11-12.) These communications led to the formation of the allegedly breached contract. They are sufficient to support venue in Illinois. *See Pasulka*, 131 F. Supp. 2d 988 at 994 (stating that "venue under [§] 1391(a)(2) may be satisfied by a communication to or [from] the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action."). In *Pasulka v. Sykes*, the Court held that venue was proper where the only connection the defendant had to Illinois was speaking on the

14

telephone with the plaintiff on numerous occasions. *Id.* Because in this case, substantial events giving rise to the claims, including telephone conversations, e-mails, and face-to-face negotiations, occurred in Illinois, venue is proper. Thus, defendants' motion to dismiss based on Rule 12(b)(3) is denied.

### III. Motion to Dismiss for Failure to State a Claim

In reviewing motions to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and resolve any ambiguity in the plaintiff's favor. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir. 1996). The complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp. 2d 874, 877 (N.D. Ill. 1999). The court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, where fraud is alleged, the pleading standard is higher, and the circumstances involving the fraud must be stated with particularity. FED. R. CIV. P. 9(b).

The Court denies the motion to dismiss with respect to Count I of the complaint because the plaintiff alleges facts sufficiently setting forth the elements of a breach of contract. To survive a motion to dismiss a breach of contract claim, the complaint must satisfy the liberal federal notice pleading standard. *Quantum Color Graphics, LLC v. Fan Ass'n Event Photo GmbH*, 185 F. Supp. 2d 897, 905 (N.D. Ill. 2002). "[G]eneral allegations of the existence of the contract, defendant's breach, and damages from the breach are sufficient." *Id.*

Defendants' major argument in support of their motion is that the facts the plaintiff alleges are not sufficiently definite. The Court disagrees. Plaintiff alleges a contract in which they orally agreed to invest in BBN and help BBN sell its franchise business so that BBN could repay defendants, and in consideration for this defendants agreed to invest some of the money they were repaid in plaintiff's company. (Compl. ¶¶ 28-30.) Plaintiff alleges that the contract was breached when defendants did not make the investment and that they were damaged by this breach. Given the liberal notice pleading requirements of Rule 8(a), these allegations are sufficient to establish a claim for breach of contract.

Defendants also argue that plaintiff's breach of contract claim is deficient because it does not allege adequate consideration. They posit that plaintiff bases its allegation of consideration on the payment of $650,000 from BBN to the defendants, which the defendants were to then invest in plaintiff. Defendants argue that this is inadequate consideration under "hornbook law" because BBN was already obligated to pay the defendants that money. The Court disagrees. BBN may have been obligated to pay $650,000 to defendants, and BBN could not base consideration for a subsequent contract on a promise to pay that same money. However, Chicago 216 was not obligated to defendants in any way. It was under no obligation to invest in BBN and enable it to make its payments to defendants. In this way, plaintiff was acting analogously to a guarantor of a pre-existing debt who takes additional consideration for his promise to guarantee another's obligations. There is no question that under Illinois law parties can enter into contracts to guarantee another's pre-existing debt for additional consideration.

*See Cont'l Nat'l Bank of Fort Worth v. Schiller*, 89 Ill. App. 3d 216, 219 (3d Dist. 1980).

Accordingly, the Court denies defendants' Rule 12(b)(6) motion to dismiss Count I.

Next, the Court grants defendants' motion to dismiss Count II. The elements of

equitable estoppel are 1) a misrepresentation of a material fact; 2) defendant's knowledge

that the representation was untrue; 3) plaintiff did not know the misrepresentations were

untrue; 4) defendant reasonably expected plaintiff would rely on the misrepresentation;

5) plaintiff relied on the misrepresentations in good faith; and 6) plaintiff would be

prejudiced if defendant denied the truth of the representations. *In re Marriage of

Schmidt*, 292 Ill. App. 3d 229, 241 (4th Dist. 1997). Equitable estoppel is different from

promissory estoppel in that equitable estoppel involves misrepresentations of existing

fact, and promissory estoppel involves promises of future action. *Derby Meadows Util.

Co., Inc. v. Inter-Cont'l Real Estate*, 202 Ill. App. 3d 345, 360 (1st. Dist. 1990).[2] The

only misrepresentation of an existing fact that plaintiff alleges in its complaint is that

Plotkin represented to it that he was the agent of and had authority to bind defendants.

(Compl. ¶ 50.) The alleged misrepresentation is insufficient to support a claim of

equitable estoppel. Even if Plotkin had made misrepresentations that led plaintiff to

believe that he had authority to bind defendants, it would not independently support a

claim of equitable estoppel, because these misrepresentations alone did not induce

---

[2] The Court notes that the Seventh Circuit has questioned whether Illinois courts continue to maintain a distinction between equitable and promissory estoppel. *See Geva v. Leo Burnett Co., Inc.*, 931 F.2d 1220, 1223 n.3 (7th Cir. 1991) ("Illinois at one time maintained a distinction between promissory and equitable estoppel, but those doctrines seem to overlap in great part today.") (citing *R.S. Bennett & Co. v. Economy Mechanical Indus., Inc.*, 606 F.2d 182, 187 n.5 (7th Cir. 1979); *Gold v. Dubish*, 193 Ill. App. 3d 339, 347-48 (1989)). However, since the *Burnett* case, Illinois cases have reinforced the distinction between promissory and equitable estoppel as being that promissory estoppel is based on a promise of future action, and equitable estoppel is based on a misrepresentation of existing face. *See In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 240-42 (4th Dist. 1997); *Dickens v. Quincy College Corp.*, 245 Ill. App. 3d 1055, 1062-63 (4th Dist. 1993).

plaintiff to act pursuant to the oral agreement.[3] The alleged promises that defendant would invest in Chicago 216 in the future induced plaintiff to act. In its opposition brief, plaintiff itself makes this argument, and argues that defendant should be estopped because of their "false misrepresentations regarding Defendants' intent to invest in Chicago." (Pl.'s Opp'n Def.'s Mot. Dismiss at 14.) These promises do not support a claim of equitable estoppel because they are not misrepresentations of existing conditions but promises of future actions. Thus, plaintiff asserts equitable estoppel in its complaint and argues for promissory estoppel in its briefs. The facts asserted in the complaint do not give rise to equitable estoppel. Count II is therefore dismissed without prejudice. Plaintiff, in its opposition brief, seems to argue that promissory estoppel applies. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). If plaintiff wishes to amend the complaint to plead promissory estoppel, it can do so by moving for leave to amend the complaint.

The Court also dismisses Count III because plaintiff has not pleaded defendants' allegedly fraudulent misrepresentations with sufficient particularity under Rule 9(b). The elements of a claim for fraudulent misrepresentation are "1) that the defendant made a statement; 2) of a material nature; 3) which was untrue; 4) known by the person making it to be untrue, or made in culpable ignorance of its truth or falsity; 5) relied on by the victim to his detriment; 6) made for the purpose of inducing reliance; and 7) the victim's

---

[3] Furthermore, the alleged misrepresentations as to Plotkin's authority were made by Plotkin and not defendants. If Plotkin had no authority whatsoever under agency law and misrepresented that he had authority, then any misrepresentations he made would not be binding on the defendants. Only misrepresentations made by a defendant, or someone acting with authority for the defendant, can give rise to equitable estoppel against the defendant. *Bd. of Educ. S. Stickney Sch. Dist. No. 111 v. Murphy*, 56 Ill. App. 3d 981, 985 (1st. Dist. 1978).

reliance led to his injury. *Bensdorf*, 58 F. Supp. 2d at 881. Illinois law permits causes of

action based on promissory fraud if the plaintiff alleges and ultimately proves that the

fraudulent representation is part of a scheme to defraud. The defendant must have

intended for his misrepresentation to induce the plaintiff to act in reliance on the

misrepresentation for the defendant's benefit. *Id.* However, Rule 9(b) requires that "the

circumstances constituting fraud . . . shall be stated with particularity." FED. R. CIV. P.

9(b). To meet the Rule 9(b) requirement, when the fraud is based on false

misrepresentations, the plaintiff must state "the identity of the person making the

misrepresentation, the time, place, and content of the misrepresentation, and the method

by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v.

Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). In other words, the plaintiff must

plead the "who, what, where, and when" of the alleged fraud. *Id.*

Plaintiff's fraud claim must be dismissed because it has not pleaded the

misrepresentations with adequate particularity. Plaintiff alleges generally that defendants

misrepresented to Chicago 216 and its agent Rubio that they would make the investment

at issue in this case. However, the most specific the plaintiffs are regarding the when and

where of these misrepresentations is that they occurred in "numerous telephone

conversations and meetings in Encino, California and Pompano Beach, Florida, in

December, 2000 and January, 2001" with Plotkin. (Compl. ¶ 26.) The complaint also

mentions the meeting between Plotkin and Rubio in Chicago. However, the complaint

does not list the date for this meeting, which occurred on April 26, 2001 according to

Plotkin's affidavit. (Compl. ¶ 12; Plotkin Aff. ¶ 11.) Furthermore, although the

complaint speaks generally about Plotkin binding defendants in an oral contract through

19

these discussions, it gives no information as to when defendants Kum and Mammen discussed the terms of the alleged contract or made false and fraudulent representations to Chicago 216. The complaint only says very generally that "Kum and Mammen each made false representations to Chicago and its agent Rubio." (Compl. ¶ 53.) The complaint does not even say whether or not Kum and Mammen ever personally met any representative of Chicago 216, and it is only through Plotkin's affidavit that the Court knows that such a meeting did take place. Nor does the complaint specify which defendant made which misrepresentations. "Where the plaintiff alleges that multiple defendants committed a fraud, the complaint may not simply lump all the defendants together, but must specify which defendant committed which allegedly fraudulent act." *TLMS Motor Corp. v. Toyota Motor Distribs., Inc.*, 912 F. Supp. 329, 334 (N.D. Ill. 1995). Although these general allegations are sufficient to put the defendants on notice for a claim of breach of oral contract, they do not meet the more stringent requirements of Rule 9(b) regarding fraud. Claim III is therefore dismissed without prejudice.

Similarly, plaintiff's civil conspiracy claim (Count IV) is also dismissed without prejudice. "[A] conspiracy is not an independent tort. Where . . . a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails." *Indeck N. Am. Power Fund, L.P. v. Norweb plc*, 316 Ill. App. 3d 416, 432 (1st Dist. 2000). Plaintiff bases its conspiracy claim on its fraud claim. (Compl. ¶ 62.) Because the fraud claim fails, the conspiracy claim fails as well.

The Court also dismisses plaintiff's claim for tortious interference with prospective economic advantage (Count V) without prejudice. Both parties agree that plaintiff has not properly plead the elements of this cause of action. Specifically, this tort

requires "a showing of action by the defendants toward a third party." *Williams v. Weaver*, 145 Ill. App. 3d 562, 570 (1st Dist. 1986). Plaintiff admits that its claim is inadequate because it does not allege any action by defendants toward a third party. Accordingly, the Court dismisses Count V without prejudice.[4]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss [doc. no. 5-1]. The Court denies the motion to dismiss based on Rule 12(b)(2) and 12(b)(3). The Court grants the motion to dismiss based on Rule 12(b)(6) as to Counts II, III, IV, and V and dismisses those counts without prejudice and denies the Rule 12(b)(6) motion as to Count I.

**SO ORDERED**                     **ENTERED:** *10/30/02*

*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**

---

[4]The Court reserves judgment as to whether it will grant plaintiff leave to amend the complaint with regard to Count V. The Court will make that determination if and when plaintiff moves for leave to amend the complaint.